## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM PAGER, et al.,

      Plaintiffs,

      v.

METROPOLITAN EDISON, a/k/a
MET-ED FIRSTENERGYCORP., et
al.,

      Defendants.

CIVIL ACTION NO. 3:17-cv-00934

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a diversity action brought by New York residents William and Jenna Pager, a married couple, against several corporate defendants: (a) FirstEnergy Corp. ("FirstEnergy"), an Ohio corporation with its principal office in Akron, Ohio; (b) Metropolitan Edison a/k/a Met-Ed ("Met-Ed"), a Pennsylvania corporation and wholly owned subsidiary of FirstEnergy with its principal office in Reading, Pennsylvania; (c) the Federal National Mortgage Association a/k/a Fannie Mae ("Fannie Mae"), a District of Columbia corporation with its principal office in Washington, D.C.;[1] and (d) Allstate Insurance Company ("Allstate"), an

---

[1] *See generally* 12 U.S.C. § 1717(a)(2)(B) (chartering Fannie Mae
*(continued on next page)*

Illinois corporation with its principal office in North Brook, Illinois. The Pagers have asserted negligence claims against all four defendants, breach of contract claims against Met-Ed and Allstate, and a bad faith claim against Allstate. They seek an award of damages in excess of $75,000. In addition, Fannie Mae and Allstate have asserted cross-claims for contribution and indemnity against each of the other defendants.

## I. BACKGROUND

The Pagers own a vacation home in the Birchwood Lakes subdivision of Delaware Township, Pennsylvania, with a street address of 131 East Lake View Drive, Dingman's Ferry, Pennsylvania 18328. Met-Ed provides electric service to the property.

In November 2014, Fannie Mae contacted Met-Ed and advised that it had recently acquired a property through foreclosure, requesting that electric service for the property be transferred to a new account to be paid by Fannie Mae. The property Fannie Mae had foreclosed upon was located in Wild Acres, an entirely different subdivision of Delaware Township, with a street address of 131 Fall Court, Dingman's Ferry,

and providing that it shall be deemed a D.C. corporation for jurisdiction and venue purposes).

Pennsylvania 18328. But it had at one time been known by the very same street address as the Pagers' home—131 East Lake View Drive, Dingman's Ferry, Pennsylvania 18328. At some point, it was changed due to 9-1-1 emergency communications requirements, but the sheriff's deed conveying the property to Fannie Mae contained only the outdated, duplicative street address, which Fannie Mae then provided to Met-Ed in requesting that electric service be transferred into its name.

Met-Ed terminated the Pagers' electric service account. Because of prior instances in which Met-Ed bills were not delivered to the proper mailing address in New York, they had enrolled in electronic billing and automatic bill payment by credit card. As a result, the Pagers did not notice when billing for electric service to their Pennsylvania vacation home ceased in November 2014.

After Fannie Mae learned of the address discrepancy, it updated the property's street address in its own records and, on January 28, 2015, it requested that Met-Ed have electric service to 131 East Lake View Drive removed from its account. Met-Ed complied with the request, terminating electric service altogether for the Pagers' property at 131 East Lake View Drive.

In June 2015, the Pagers visited their Pennsylvania vacation home for the first time since December 2014.[2] They found that the property was without electricity, and that, at some point after the power was turned off, water pipes and toilet tanks throughout the home had ruptured due to freezing, causing extensive water damage. They contacted Met-Ed and, only after several days of telephone inquiries, they learned that electricity services had been transferred to Fannie Mae in November 2014 due to foreclosure, and that Fannie Mae later terminated electric service to the property. The Pagers were advised that no further information could be disclosed about another customer's account. The Pagers were able, however, to arrange for electric service to be reinstated a few days later, to be billed to them under a newly established account.

The Pagers attempted to contact Fannie Mae to determine what happened, but despite several calls they were unable to obtain any substantive response from Fannie Mae staff. Other than reestablishing

_____

[2] Prior to this, in September or October 2014, the Pagers "winterized" the home by setting thermostats throughout the home at 45 or 50 degrees and shut off the incoming water supply. They did not, however, drain water from the interior plumbing. The December 2014 visit was a brief visit of no more than a couple of hours made in conjunction with a holiday shopping trip to a nearby outlet mall.

electric service and correspondence regarding their newly created account, the Pagers were unable to learn anything from Met-Ed either. They were only able to learn the details of what occurred through discovery in this litigation.

On June 26, 2015—the day after they discovered the damage to their property—the Pagers notified their property insurer, Allstate, of the loss. On July 7, 2015, an Allstate adjuster conducted an inspection of the property, determining that water damage to the property stemmed from frozen and ruptured plumbing caused by an extended loss of electric power. The adjuster advised the Pagers that they were responsible for maintaining heat in the property, and he requested proof that they did so during their six-month absence. The Pagers, of course, were only able to provide utility bills through November 2014. By letter dated July 19, 2015, Allstate denied coverage for the property loss based on a policy exclusion. That policy exclusion provided that the policy did not cover loss to covered property caused by freezing of plumbing, or discharge from systems caused by freezing, when the structure is vacant or unoccupied, unless the insured has used reasonable care to maintain heat in the structure, or to shut off the water supply and drain the system.

On September 16, 2016, the Pagers commenced this action by filing their complaint in the United States District Court for the Eastern District of New York. The case was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404.

Now before the Court are several cross-motions for summary judgment.

Allstate has moved for summary judgment with respect to the plaintiffs' contract, bad faith, and negligence claims and with respect to Fannie Mae's cross-claims for contribution and indemnity. (Doc. 78; *see also* Doc. 78-1; Doc. 87; Doc. 90; Doc. 125; Doc. 132.)

Met-Ed and FirstEnergy have jointly moved for summary judgment with respect to the plaintiffs' contract and negligence claims. (Doc. 82; *see also* Doc. 153; Doc. 168.) William Pager has also moved for summary judgment with respect to these same claims against Met-Ed and FirstEnergy. (Doc. 145; *see also* Doc. 148; Doc. 160; Doc. 169.)

Fannie Mae has moved for summary judgment with respect to the plaintiffs' negligence claim, and with respect to the amount of damages sought by the plaintiffs. (Doc. 79; Doc. 140; *see also* Doc. 141; Doc. 147; Doc. 155; Doc. 159; Doc. 163; Doc. 165; Doc. 166.) William Pager has also

moved for summary judgment with respect to the same claim against Fannie Mae. (Doc. 142; *see also* Doc. 147; Doc. 155; Doc. 159; Doc. 163; Doc. 165; Doc. 166.)

These motions are fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion,"

and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d. 418, 433 (M.D. Pa. 2014) (citation omitted). "[E]ach movant must demonstrate that no genuine

issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions. *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III.  DISCUSSION

### A. William Pager's Status as a *Pro Se* Litigant

As a preliminary matter, the Court notes that both plaintiffs are currently proceeding *pro se* in this matter. Although a federal court is generally obligated to liberally construe the filings of *pro se* litigants, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013), neither the original complaint nor the motion papers subsequently filed by William Pager alone are entitled to liberal construction in this case.

The original complaint was prepared and filed in a New York federal district court by William Pager, a licensed attorney admitted to the bar of that court, in his role as counsel of record appearing on behalf of both himself and his wife, Jenna Pager. The case was subsequently transferred to this Court, however, pursuant to 28 U.S.C. § 1404. (Doc. 33.) The plaintiffs did not retain local counsel to represent them, but

instead opted to proceed *pro se* in this Court. *See Pager v. Metro. Edison*, Civil Action No. 3:17-cv-00934, 2018 WL 491014, at *3 n.1 (M.D. Pa. Jan. 19, 2018) (noting that William Pager is a lawyer admitted to practice in New York, but not in Pennsylvania, and thus he and his wife were appearing *pro se* in proceedings before this Court).

William's subsequently filed summary judgment motion papers were prepared and filed by him in his role as a *pro se* litigant after the transfer,[3] but, as a trained attorney at law—albeit one not admitted to practice in Pennsylvania or before this Court—William is not entitled to have his filings liberally construed. *See McNamara v. Brauchler*, 570 Fed. App'x 741, 743 & n.2 (10th Cir. 2014) (per curiam) ("[T]he purpose behind affording liberal construction to *pro se* filings—which is to assure adequate review of claims brought by non-legally trained individuals— would not be furthered by construing [a *pro se* attorney's] filings

---

[3] We note that all papers seeking and opposing summary judgment on behalf of the plaintiffs are signed by William Pager alone. His wife, Jenna, has not signed any of these papers, and as a *pro se* litigant, William is not permitted to represent other parties or their interests in federal litigation. *See Osei-Afriyie v. Med. Coll. of. Pa.*, 937 F.2d 876, 882–83 (3d Cir. 1991) (non-lawyer may not represent minor children); *Williams v. United States*, 477 Fed. App'x 9, 11 (3d Cir. 2012) (per curiam) (non-lawyer may not represent parent in federal litigation under state power-of-attorney).

liberally."); *Feingold v. Unitrin Direct*, Civil Action No. 12-1250, 2012 WL 3866945, at *3 (E.D. Pa. Sept. 6, 2012); *Allegrino v. Conway E & S, Inc.*, Civil Action No. 09-1507, 2010 WL 3943939, at *5 (W.D. Pa. Oct. 6, 2010).

## B. Allstate's Motion for Summary Judgment

Allstate has moved for summary judgment with respect to the plaintiffs' contract, bad faith, and negligence claims and with respect to Fannie Mae's cross-claims for contribution and indemnity.

Allstate issued two successive homeowners insurance policies providing coverage for the Pagers' vacation home. The first policy, bearing policy number 908443562, provided coverage for the period of January 28, 2014, through January 28, 2015. A second policy, bearing the same policy number, provided coverage for the period of January 28, 2015, through January 28, 2016. The two policies were otherwise identical in all material terms.

The policies provided insurance coverage for property damage to the dwelling itself and to personal property, with coverage limits that exceeded the total amount of damages sought by the plaintiffs in this case. The policies included the following exclusion from coverage for property damage to the dwelling itself:

We do not cover loss to [your dwelling] consisting of or caused by: . . .

14.  Freezing of plumbing . . . or discharge, leakage or overflow from within the systems . . . caused by freezing, while the building structure is vacant, unoccupied or being constructed unless you have used reasonable care to:

a)  maintain heat in the building structure; or

b)  shut off the water supply and drain the system . . . .

(Doc. 78-3, at 27, 29; Doc. 78-4, at 37, 39.) The policies contained a similar exclusion from coverage for property damage to personal property:

We do not cover loss at the residence premises under perils . . . (13) [(water that escapes from a plumbing system)], and (14) [(freezing of a plumbing system)] caused by or resulting from freezing while the building structure is vacant, unoccupied or under construction unless you have used reasonable care to:

a)  maintain heat in the building structure; or

b)  shut off the water supply and drain the water from the systems and appliances.

(Doc. 78-3, at 32; Doc. 78-4, at 42.)

Finally, the policies contained an identical suit-limitations clause:

No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

(Doc. 78-3, at 40; Doc. 78-4, at 50.)

### *1. The Pagers' Negligence Claim*

In Count IX of the complaint,[4] the Pagers have asserted a general negligence claim against all defendants. With respect to Allstate, the plaintiffs' negligence claim is based solely on Allstate's conduct during the claims-handling process. In particular, they claim that Allstate failed to perform reasonably under its contractual obligation to fully investigate and adjust claims in good faith. Allstate has moved for summary judgment on this claim, arguing that the plaintiffs' negligence claim is duplicative of their contract claim, and thus barred by Pennsylvania's "gist of the action" doctrine.

"The gist of the action doctrine bars tort claims when (1) the tort claim arises solely from the contractual relationship with the parties; (2) the alleged duties breached were grounded in the contract itself; (3) any liability stems from the contract; and (4) the tort claim essentially duplicates the breach of contract claim." *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 533 (M.D. Pa. 2007). "The principle underlying the

---

[4] We note that Count VII of the complaint is asserted against an unserved fictional defendant only, and there is no Count VIII.

doctrine is that a tort action derives from 'the breach of duties imposed as a matter of social policy,' whereas a breach of contract action stems from 'the breach of duties imposed by mutual consensus.'" *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 312 F.R.D. 394, 397 (W.D. Pa. 2015) (quoting *Redevelopment Auth. of Cambria Cty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996)).

Here, the plaintiffs' general negligence claim is based solely on Allstate's failure to perform reasonably under its contractual obligations, none of which would be binding upon it aside from the insurance agreement. The plaintiffs identify no broader social duty outside of the contract of insurance.[5] Accordingly, the plaintiffs' negligence claim against Allstate is properly dismissed. *See Simon v. First Liberty Ins. Corp.*, 225 F. Supp. 3d 319, 324–26 (E.D. Pa. 2016); *Myerski v. First*

_____

[5] In his opposition brief, William Pager argues that the plaintiffs' bad faith claim implicates broader social policy. But the plaintiffs' bad faith claim is an intentional tort claim distinct from their general negligence claim. *See, e.g.*, *NVR, Inc. v. Motorists Mut. Ins. Co.*, 371 F. Supp. 3d 233, 255 (W.D. Pa. 2019) ("A finding of bad faith requires more than 'mere negligence or bad judgment' in denying a claim."); *Zurich Am. Ins. Co. v. FTS USA, LLC*, 325 F. Supp. 3d 618, 630 (E.D. Pa. 2018) ("[M]ere negligence is not bad faith."), *appeal filed*, No. 18-2821 (3d Cir. Aug. 17, 2018); *Lomma v. Ohio Nat'l Life Assurance Corp.*, 329 F. Supp. 3d 78, 96 (M.D. Pa. 2018) ("[M]ere negligence or bad judgment does not constitute bad faith . . . .").

*Acceptance Ins. Co., Inc.*, Civil Action No. 3:16-CV-488, 2016 WL 3227266, at \*9–\*10 (M.D. Pa. June 13, 2016); *Oehlmann*, 644 F. Supp. 2d at 533–34.

Accordingly, we will grant summary judgment in favor of Allstate with respect to the plaintiffs' general negligence claim (Count IX).

### 2. The Pagers' Breach of Contract Claim

In Count IV of the complaint, the Pagers challenge Allstate's denial of coverage as a breach of contract. Allstate has moved for summary judgment based on the suit-limitation clause set forth above.

Under Pennsylvania law, contract claims are generally governed by a four-year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5525(a). But "[i]t is well established in Pennsylvania that a contractual modification of the ordinary statute of limitations is valid and enforceable." *Cain Village Assoc., L.P. v. Home Indem. Co.*, 75 F. Supp. 2d 404, 409 (E.D. Pa. 1999). "By statute, Pennsylvania law provides that contractual limitations of suit provisions, which are shorter than the applicable statute of limitations, are valid provided they are not manifestly unreasonable." *Id.*; *see also* 42 Pa. Cons. Stat. Ann. § 5501(a). The Pennsylvania legislature has recognized that a one-year suit limitation

clause in a fire policy is reasonable. *See* 40 P.S. § 636(2) (establishing standard fire policy provisions, including 12-month suit-limitation clause); *see also Cain Village*, 75 F. Supp. 2d at 410. Pennsylvania state courts have long recognized this as well. *See Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 741 (Pa. 1967) ("That [a 12-month suit-limitations] clause is valid and reasonable has been long recognized."); *see also Cain Village*, 75 F. Supp. 2d at 410.

Here, the precise date upon which the loss occurred is not known. But the Pagers first learned of the property damage when they visited their vacation home in Dingman's Ferry on June 25, 2015. They promptly provided notice to their insurer, Allstate, on June 26, 2015. On July 7, 2015, an Allstate adjuster conducted an in-person inspection of the property, determining that water damage to the property stemmed from frozen and ruptured plumbing caused by an extended loss of electric power. By letter dated July 19, 2015, Allstate denied coverage for the property damage on the ground that the plaintiffs had failed to use reasonable care in maintaining heat in their Pennsylvania home. On July 21, 2015, the insurance adjuster verbally advised the Pagers that the denial letter had been issued and mailed. This action was commenced on

September 16, 2016, well more than "one year after the inception of loss or damage."

Accordingly, we will grant summary judgment in favor of Allstate with respect to the plaintiffs' breach of contract claim (Count IV).

### 3. The Pagers' Bad Faith Claims

In Count V of the complaint, the Pagers allege that Allstate failed to adequately investigate and denied their claim in bad faith. As Allstate has noted, the plaintiffs have not specified whether this claim is intended as a common law or statutory bad faith claim. To the extent the claim is construed as a common law bad faith claim, Allstate moves for summary judgment based on the suit-limitation clause. To the extent the claim is construed as a statutory bad faith claim, Allstate moves for summary judgment on the ground that its investigation and coverage determination were reasonable.

"[U]nder Pennsylvania law, an insured may bring both a common law contract action and a statutory action against an insurer for bad faith." *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 472 (E.D. Pa. 2011); *see also Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d 376, 390 (Pa. 2001) (Nigro, J., concurring) ("There are two separate 'bad faith' claims

that an insured can bring against an insurer—a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim . . . under 42 Pa. [Cons. Stat. Ann.] § 8371.").

With respect to the same underlying conduct, the two causes of action are complimentary. Under § 8371, compensatory damages are not an available remedy for a statutory bad faith claim. *Cummings*, 832 F. Supp. 2d at 471 (citing *Birth Ctr.*, 787 A.2d at 386); *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011) (citing *Birth Ctr.*); *see also* 42 Pa. Cons. Stat. Ann. § 8371 (providing for recovery of interest, punitive damages, court costs, and attorney fees). But "under Pennsylvania law, an insured is permitted to bring a bad faith claim sounding in contract to recover those types of damages available in contract actions generally, including compensatory damages." *Id.* at 471 (citing *Birth Ctr.*); *see also Simmons*, 788 F. Supp. 2d at 410 ("Compensatory damages are available under Pennsylvania's common law of contracts, even where the action is brought under a bad faith theory."); *Scott v. Geico Gen. Ins. Co.*, Civil Action No. 3:11-1790, 2013 WL 3147637, at *7 (M.D. Pa. June 19, 2013) (punitive damages and attorney fees not available relief in contract actions).

To the extent this claim may be viewed as a common law contract claim, it is time-barred for the same reasons stated in the preceding section of this memorandum. *See Long v. United Farm Family Ins. Co.*, C.A. No. 15-305 ERIE, 2017 WL 661604, at *7–*9 (W.D. Pa. Feb. 17, 2017) (applying contractual suit-limitation clause to common law bad faith claim). The plaintiffs' bad faith claims accrued upon denial of coverage on July 19, 2015. *See id.* at *9; *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1040, 1042–43 (Pa. Super. Ct. 1999).

To the extent it is instead viewed as a statutory bad faith claim, brought pursuant to 42 Pa. Cons. Stat. Ann. § 8371, this statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. Under Pennsylvania law,

> the term bad faith includes any frivolous or unfounded

refusal to pay proceeds of a policy. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citations and internal quotation marks omitted). "These two elements— absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis— must be proven by clear and convincing evidence." *Cozzone v. AXA Equitable Life Ins. Soc. of the U.S.*, 858 F. Supp. 2d 452, 458 (M.D. Pa. 2012) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)); *see also Bodnar v. Nationwide Mut. Ins. Co.*, 660 Fed. App'x 165, 167 (3d Cir. 2016) ("Bad faith must be demonstrated by clear and convincing evidence, even on summary judgment."); *Lomma v. Ohio Nat'l Life Assurance Corp.*, 329 F. Supp. 3d 78, 96 (M.D. Pa. 2018) (quoting *Bodnar*).

Section 8371 encompasses a broad range of insurer

conduct. For example, bad faith includes an unreasonable delay in handling claims, "a frivolous or unfounded refusal to pay, . . . [and] a failure to communicate with the insured." "Bad faith also occurs when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue."

*Smith*, 904 F. Supp. 2d at 524 (citations omitted, alterations in original). Ultimately, "[a] reasonable basis is all that is required to defeat a claim of bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

The plaintiffs argue that Allstate failed to adequately investigate their property damage claim. They suggest that a single, one-day visit to the property was insufficient to ascertain the information necessary to determine the cause of the damage, particularly in light of the adjuster's failure to contact Met-Ed, FirstEnergy, and Fannie Mae to determine what events led to the transfer and termination of electric service at the Pagers' Pennsylvania vacation home. They further argue that the denial of coverage was unreasonable because they had set the thermostats in the home high enough to prevent a freeze out, and they had no actual knowledge of the transfer or termination of electric service until they visited in June 2015, several months after these events caused the

property damage. But "[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999).

Viewing the evidence in the light most favorable to the plaintiffs, it is clear that they have failed to adduce clear and convincing evidence of bad faith. While Allstate and its adjuster may not have pursued an investigation into the ultimate cause of the property damage to the extent they desired, a single, one-day visit to the home was sufficient for the adjuster to ascertain that the property was vacant for an extended period of time, that electric service to the home had been shut off for a period of months resulting in a failure to maintain heat inside the home over an extended period of time, and that the cause of property damage was a freeze out. This information, together with that gathered by claims handlers—including, in particular, the Pagers' failure to note over the course of several months that they were no longer being billed for electric service—was sufficient for Allstate to reasonably determine that the Pagers had failed to use reasonable care to maintain heat in the home while it was vacant for several months of winter weather. Stated another

way, we find that, based on the evidence adduced by the parties on summary judgment, viewed in the light most favorable to the plaintiffs, no reasonable jury could find that Allstate's investigation was inadequate or that its denial of coverage was frivolous or unfounded.

Accordingly, we will grant summary judgment in favor of Allstate with respect to the plaintiffs' bad faith claims (Count V).

### 4. Fannie Mae's Cross-Claims

Fannie Mae has asserted cross-claims for contribution and indemnity against each of the other defendants, including Allstate. There is simply no basis for Allstate—the plaintiffs' property insurer—to be liable to Fannie Mae—an alleged tortfeasor—for contribution or indemnity. "[C]ontribution only arises in cases involving concurrent tort liability." *Richardson v. John F. Kennedy Mem. Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993). Allstate is not a joint tortfeasor with Fannie Mae or the other defendants, notwithstanding the plaintiffs' general negligence claim asserted against unspecified "defendants"—which we have dismissed as against Allstate. Similarly, under the facts alleged and evidence adduced in this case, there is no imaginable scenario in which Allstate would have a legal obligation to indemnify Fannie Mae. *See EQT*

*Prod. Co. v. Terra Serv., LLC*, 179 F. Supp. 3d 486, 494 (W.D. Pa. 2016);

*Richardson*, 838 F. Supp. at 989–90.

Accordingly, we will grant summary judgment in favor of Allstate with respect to the Fannie Mae's cross-claims for contribution and indemnity against Allstate.

### C. Met-Ed and FirstEnergy's Motion for Summary Judgment

Met-Ed and FirstEnergy have jointly moved for summary judgment with respect to the plaintiffs' contract and negligence claims. They contend that FirstEnergy may not be held liable to the plaintiffs because it is a holding company—a separate and distinct corporate entity from Met-Ed—whose only relationship to this case is its role as parent company to its wholly owned operating subsidiary, Met-Ed. They further contend that the plaintiff has failed to adduce any evidence that Met-Ed and FirstEnergy breached any duty they may have owed to the Pagers.

### 1. FirstEnergy as a Distinct Corporate Entity

In Counts III and IX of the complaint, the plaintiffs seek to hold FirstEnergy liable for negligence. Met-Ed and FirstEnergy have moved for summary judgment on this claim on the ground that FirstEnergy is a distinct corporate entity from Met-Ed, and thus it cannot be held liable

for the provision of electric services, or the termination of such services, by Met-Ed.

But the plaintiffs do not simply seek to impose vicarious liability on FirstEnergy in its role as parent company to Met-Ed. Instead, the evidence of record indicates that FirstEnergy and its employees played an active role in the wrongful conduct alleged by the plaintiffs. Met-Ed was the operating subsidiary providing and billing for electric service to the Pagers' vacation home. But the customer service personnel with whom Fannie Mae communicated in transferring and later terminating electric service to the plaintiffs' vacation home, and with whom the Pagers later communicated in investigating the termination and reestablishing electric service to the home, were employed by—and held themselves out as employees of—*FirstEnergy*. Indeed, while FirstEnergy or its employees may have been acting as agents for Met-Ed in their interactions with Fannie Mae and the Pagers, they and FirstEnergy remain liable for their own negligence. *See Hricik v. Stryker Biotech, LLC*, 89 F. Supp. 3d 694, 700–01 (E.D. Pa. 2015) ("Pennsylvania law recognizes the participation theory, under which a corporate officer, employee, or other agent 'who takes part in the commission of a tort by

the corporation is personally liable therefor."); *see also Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d 488, 501 (E.D. Pa. 2007) ("It is well-established under American tort law that an agent is liable for its own negligence; and the rights of a principal and agent relative to each other are not the measure of the rights of third persons against either of them for tortious conduct."); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247, 252 (Pa. Super. Ct. 1977) ("It is immaterial that Cathcart, at all times, was acting in his capacity as an agent of Clayton Equipment Company if, in fact, it was Cathcart's negligent design which contributed to appellant's injury. Appellant's theory of liability against Cathcart is not vicariously or derivatively drawn from Cathcart's relationship with Clayton, but rather it is predicated on Cathcart's personal involvement, albeit as an agent for Clayton in the negligent design and construction of the car wash.").

Accordingly, we will deny summary judgment in favor of FirstEnergy on these grounds.

### 2. Duties Owed by Met-Ed and First Energy

In Counts I, III and IX of the complaint, the plaintiffs seek to hold Met-Ed and FirstEnergy liable for negligence. In Count II, the plaintiffs

assert a breach of contract claim against Met-Ed. These defendants have moved for summary judgment on the ground that the plaintiffs have failed to adduce any evidence that Met-Ed or FirstEnergy breached any duty owed to the Pagers.

### a. Negligence Claims Against Met-Ed and FirstEnergy

"To prevail in a negligence action, a plaintiff must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage." *Perez v. Great Wolf Lodge of the Poconos LLC*, 200 F. Supp. 3d 471, 478 (M.D. Pa. 2016) (quoting *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d Cir. 2009)).

Met-Ed and FirstEnergy contend that the plaintiffs have failed to demonstrate a breach of any duty they owed to the plaintiffs, arguing generally that they followed "proper protocols" and that the plaintiffs failed to adduce expert testimony or other evidence to establish that Met-Ed's and FirstEnergy's actions violated industry norms in transferring electric service for the Pagers' home to Fannie Mae at the unilateral request of Fannie Mae, and in discontinuing electric service to the Pagers' home at Fannie Mae's unilateral request, without notice to or consent by

the property owners, the Pagers. In particular, Met-Ed and FirstEnergy note that they had no actual knowledge that the property was not in foreclosure or that electric service should have been restored to the Pagers' account instead of discontinued.

But it is well-established that, under Pennsylvania law, as a public utility, Met-Ed had a state statutory duty to

> furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and [to] make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay.

66 Pa. Cons. Stat. Ann. § 1501; *see also Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307 (1989) ("As public utilities, [privately-owned electric utility companies] are under a state statutory duty to serve the public.") (citing 66 Pa. Cons. Stat. Ann. § 1501); *State Farm Fire & Cas. Co. v. PPL Elec. Util.*, No. 5:16-cv-2703, 2017 WL 2532005, at *4 (E.D. Pa. June 9, 2017) (finding "well-recognized duties of care" imposed by § 1501); *cf. Hendrickson v. Philadelphia Gas Works*, 672 F. Supp. 823, 829 (E.D. Pa. (1987) ("After obtaining service, plaintiff became entitled to be free of

arbitrary or irrational action by the utility . . . ."). Pennsylvania courts have had occasion to find that an electric utility company has a duty under § 1501 to use reasonable means to identify and notify a property owner prior to "disconnection of electric service to a house in sub-zero temperature weather conditions." *See Rohrbaugh v. Pa. Pub. Util. Comm'n*, 663 A.2d 809, 811–12 (Pa. Commw. Ct. 1995), *rev'd on other grounds*, 727 A.2d 1080 (Pa. 1999). A related statute expressly provides that, except in emergency situations, an electric utility may not discontinue service "without personally contacting the customer [by means other than writing] at least three days prior to such discontinuance, in addition to any written notice of discontinuance of service." 66 Pa. Cons. Stat. Ann. § 1503(b).

Here, viewing the evidence in the light most favorable to the non-moving plaintiffs, we find that the parties have adduced sufficient evidence for a reasonable jury to conclude that Met-Ed—and FirstEnergy, in its role as Met-Ed's agent—negligently breached its statutory duties to furnish reasonable service, including its duties to provide reasonably continuous service without unreasonable

interruption, to provide adequate notice[6] of the transfer or termination of electric service to the Pagers' account, and to provide adequate notice to the property owners before discontinuing electric service to the home in the middle of winter. Met-Ed and FirstEnergy do not contest the causation or actual damage elements of the plaintiffs' negligence claims.

Accordingly, we will deny summary judgment in favor of Met-Ed and FirstEnergy on these grounds.

### b. Contract Claim Against Met-Ed

Met-Ed similarly argues that the plaintiffs have failed to adduce evidence that it breached any duty imposed by contract. To prove a breach of contract under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F. 3d 218, 225 (3d Cir. 2003) (quoting *CoreStates*

---

[6] We note that the Pagers were provided with a "final bill" in November 2014 on which the words "final bill" were printed inconspicuously, and the bill contained no other notice or disclaimer to inform the recipients that electric service in their names was being terminated in favor of Fannie Mae, at Fannie Mae's unilateral direction. It is undisputed that no other notice, written or personal, was provided to the plaintiffs at that time. Nor was any notice provided to the Pagers as property owners in January or February 2015, prior to the complete discontinuation of electric service to the property.

*Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (brackets in original).

The express terms of Met-Ed's electric service tariff have not been submitted by either side, but there is no apparent dispute as to the express terms of the contract under which Met-Ed agreed to provide electric service to the Pagers. Rather, the plaintiffs appear to argue that Met-Ed breached its contractual duties by transferring electric services to Fannie Mae (thereby terminating electric service in the Pagers' names) and, later, discontinuing electric service to the Pagers' vacation home in an arbitrary fashion, all without notice to the Pagers. The plaintiffs appear to contend that the exercise of discretion by Met-Ed in taking these actions violated an implied covenant of good faith and fair dealing present in the contract between them. *See Presque Isle Colon & Rectal Surgery v. Highmark Health*, 391 F. Supp. 3d 485, 512 (W.D. Pa. 2019) ("Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.") (quoting *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000); *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 429–30 (E.D. Pa. 2015) (addressing claim for breach of covenant of good faith against electricity

supply company). Under Pennsylvania law, "[t]he covenant of good faith and fair dealing involves an implied duty to bring about a condition or to exercise discretion in a *reasonable* way." *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) (cleaned up) (emphasis added); *see also Lomma*, 282 F. Supp. 3d at 266.

Here, viewing the evidence in the light most favorable to the non-moving plaintiffs, we find that the parties have adduced sufficient evidence for a reasonable jury to conclude that Met-Ed's conduct in transferring electric service to Fannie Mae based on Fannie Mae's unilateral request, and then later terminating electric service to the property at Fannie Mae's unilateral request, all without any notification to or consent by the plaintiff property owners—other than an inconspicuous and largely inscrutable notation on a single bill—may constitute an actionable breach of a contractual duty. Met-Ed does not contest any other elements of the plaintiffs' contract claim.

Accordingly, we will deny summary judgment in favor of Met-Ed and FirstEnergy on these grounds.

## D.    Fannie Mae's Motion for Summary Judgment

In Count VI and IX of the complaint, the plaintiffs seek to hold

Fannie Mae liable for negligence. Fannie Mae has moved for summary judgment with respect to the plaintiffs' negligence claim against it. First, Fannie Mae contends that the plaintiff has failed to adduce evidence that Fannie Mae owed any duty to the Pagers. Next, Fannie Mae contends that the plaintiffs have failed to adduce sufficient evidence of proximate causation. Finally, Fannie Mae contends that any damages award should be limited to amounts stated on the face of materials produced by the plaintiffs in discovery.

### 1. Duty Owed by Fannie Mae

Fannie Mae contends that the plaintiffs have failed to demonstrate that Fannie Mae owed any duty under the circumstances of this case.

"The existence of a duty is a question of law for the court to decide." *Morrison v. Wells Fargo Bank, N.A.*, 711 F. Supp. 2d 369, 383 (M.D. Pa. 2010) (quoting *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000); *see also*

*Morrison*, 711 F. Supp. 2d at 383 (quoting *Althaus*).

Fannie Mae argues that no special relationship existed between it and the Pagers. Indeed, prior to November 2014, Fannie Mae was a stranger to the Pagers and their vacation home. It did not hold or service the mortgage to their home in Birchwood Lakes, but rather it held the mortgage for an unrelated property in an entirely different subdivision that at one time was known by the same street address. But once Fannie Mae intervened and directed Met-Ed to transfer electric service to its own account, terminating electric service to the Pagers' account, a relationship of some sort was created, even if an unwitting one. This relationship might be compared to that of a trespasser on land, who is subject to liability to the possessor of the land for physical harm to the land or to the possessor's things. *See* Restatement (2d) of Torts § 162; *see also Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1163 & n.9 (Pa. Super. Ct. 2019) (citing Restatement (2d) of Torts § 162). But we need not go so far as that to find a cognizable relationship. As Fannie Mae has conceded, even "complete strangers owe each other a duty of care to not place one another at risk of harm." *I.R. ex rel. Robinson v. Peirce*, No. 3:10-CV-398, 2012 WL 3960904, at *4 (M.D. Pa. Sept. 10, 2012).

> Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time . . . . Where, as here, the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. The scope of this duty, however, is limited to those risks that are reasonably foreseeable by the actor in the circumstances of the case.

*Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985) (citations omitted) (ellipses in original).

We find an earlier decision by this Court under remarkably similar circumstances to be instructive. In *Morrison v. Wells Fargo Bank, N.A.*, 711 F. Supp. 2d 369 (M.D. Pa. 2010), the plaintiff, named James Elder Morrison, was fee simple owner of a parcel of land in Tyrone Township, Perry County, Pennsylvania. There was also another resident of Tyrone Township named James Eugene Morrison. This James Eugene Morrison (signing as "James E. Morrison") and his wife entered into a mortgage with Provident Bank, which purported to lien the property of James Elder Morrison. The mortgage was signed without James Elder Morrison's knowledge or consent. It was subsequently assigned to Wells Fargo. After a period of years, Wells Fargo filed a foreclosure action against James Eugene Morrison, his wife, and the property of James

Elder Morrison. James Elder Morrison advised Wells Fargo that there were two individuals named "James E. Morrison" who lived or owned property in Tyrone Township and that the James E. Morrison (James Eugene Morrison) who signed the mortgage did not own the property listed in the mortgage. Wells Fargo refused to file a release of mortgage. *Id.* at 374.

In *Morrison*, Wells Fargo moved for summary judgment on the ground that it owed no duty to the plaintiff property owner because it had not been involved in the loan origination or in the filing of the mortgage. But the Court noted that the *Morrison* plaintiff's claims arose not from the loan origination or the original drafting and filing of the mortgage, but from Wells Fargo's failure to release the mortgage after being informed of the error. In *Morrison*, after weighing the factors relevant to determining the existence of a duty, the Court found that Wells Fargo owed the property owner a duty to investigate and correct the error. *Id.* at 383.

Here, after considering the evidence adduced by the parties and the *Althaus* factors, we find that Fannie Mae owed the Pagers a duty not to place them at risk of harm through Fannie Mae's actions. Specifically, we

find that, the actions of Fannie Mae placed the Pagers at risk of harm to their property, and that this risk of property damage was reasonably foreseeable under the circumstances. We find that Fannie Mae owed the Pagers a duty to investigate and correct their erroneous commandeering of electric service to the Pagers' vacation property.

Whether Fannie Mae's conduct in investigating and correcting the error breached that duty is a matter for the jury to determine. We note that the evidence adduced by the parties indicates that Fannie Mae was advised by its agents of the address discrepancy *before* it initiated the electric service transfer, and that its agents or employees had expressed concern that the address be updated in Fannie Mae's systems so work could be completed before a "freeze out" occurred. We further note that it was well aware that the foreclosed property was located in the Wild Acres subdivision, and that it had received multiple bills identifying the property served by Met-Ed as one located in Birchwood Lakes. Prior to requesting that electric service be terminated, Fannie Mae had been advised by its agents that the street address had been updated to 131 Fall Court, and that its agents had experienced some confusion or difficulty in identifying the correct property due to the address

discrepancy. These and other facts of record, viewed in the light most favorable to the non-moving plaintiffs, are sufficient for a reasonable jury to conclude that Fannie Mae breached its duty to investigate and correct their erroneous commandeering of electric service to the Pagers' vacation property.

Accordingly, we will deny summary judgment in favor of Fannie Mae on these grounds.

### 2. Proximate Cause

Fannie Mae contends that the plaintiffs cannot prove that its acts or failure to act proximately caused the claimed damage to the plaintiffs' property. Fannie Mae appears to argue that the actions of Met-Ed (shutting off electric service and failing to restore the Pagers' account upon termination of Fannie Mae's account) and the plaintiffs themselves (not noticing or responding to the final bill they received in November 2014) constitute supervening causes, absolving it of any liability.

Proximate cause "may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm." *Hamil v. Bashline*, 392 A.2d 1280, 1284 (1978). "Because the issue of proximate cause is inherently fact-

based, causation is generally a question of fact for the jury." *Vaskas v. Kenworth Truck Co.*, Civil Action No. 3:10-CV-1024, 2013 WL 101612, at *12 (M.D. Pa. Jan. 8, 2013) (citing *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1164 (Pa. 2010)). "However, 'where it is clear that reasonable minds could not differ on the issue,' the issue of causation may be removed from the trier of fact's consideration." *Id.* (quoting *Summers*, 997 A.2d at 1163, and *Hamil*, 392 A.2d at 1285); *see also Benevento v. Life USA Holding, Inc.*, 61 F. Supp. 2d 407, 423 (E.D. Pa. 1999) ("[T]he existence of negligence and of contributory or comparative negligence is usually a question to be submitted to the jury upon proper instructions and the trial court should not remove the issue unless the facts leave no room for doubt.").

Here, considering the evidence adduced by the parties on summary judgment and viewing it in the light most favorable to the non-moving plaintiffs, we are unable to conclude that no reasonable jury could find that Fannie Mae's conduct was not a substantial factor in bringing about the plaintiffs' harm.

Accordingly, we will deny summary judgment in favor of Fannie Mae on these grounds.

### 3. *Limitation of Damages*

Fannie Mae contends that any damages award should be limited to amounts stated on the face of materials produced by the plaintiffs in discovery. Attached to its motion is documentation produced by the plaintiff in discovery reflecting a total of $58,747.49 in repair costs—substantially less than the "close to $100,000" in damages estimated by the plaintiffs at deposition.[7] In a sur-reply to Fannie Mae's motion for summary judgment, the plaintiffs proffered additional documentation of expenses they had incurred.[8] Fannie Mae has responded to that disclosure with a letter objection noting that this additional

---

[7] We note that Fannie Mae has also proffered its own expert report in which the total amount of repair costs is estimated at $8,121.24 in replacement cost value, or $7,439.95 in actual cash value. Both Fannie Mae's brief and its expert report take issue with the lack of detail in the plaintiff's documentation (particularly a $54,764 invoice), but neither provides any basis for us to rule at this juncture that the plaintiffs' evidence cannot be presented in a form that would be admissible at trial. *See generally* Fed. R. Civ. P. 56(c)(2). Moreover, in considering Fannie Mae's motion, we are constrained to view the evidence in the light most favorable to the non-moving plaintiffs, and thus we disregard the expert's much lower estimate for the purpose of evaluating Fannie Mae's motion for summary judgment.

[8] It is not clear from the documentation itself whether it is evidence of additional expenses incurred by the plaintiffs beyond the $58,747.49 already documented, or if some or all of it is merely supplemental to the previously documented expenses. We are unable to identify any tally of these expenses, if there is one among the motion papers before us.

documentation was not produced in discovery, which was now closed, and requesting that these additional materials be struck from the record. We subsequently held a telephone discovery conference, at which we heard from both the Pagers and Fannie Mae, and we advised the parties that we would consider the various letters and exhibits they had docketed on the matter and address them in this memorandum.

We note that Fannie Mae's letter raised a discovery dispute and expressly requested that we strike the additional materials. We have encouraged the informal disposition of discovery disputes, so we will not require Fannie Mae to file a formal Rule 37(c)(1) motion to strike these materials.

This rule provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and

> (C) may impose other appropriate sanctions,
> including any of the orders listed in Rule
> 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). Rule 26(a) pertains to initial disclosures, including a computation of damages and any supporting documentation, and Rule 26(e) pertains to the timely supplementation of initial disclosures and responses to Rule 33 interrogatories and Rule 34 requests for production. Fed. R. Civ. P. 26(a), (e). If the non-moving party's failure to disclose is not substantially justified or harmless, in determining the appropriate sanction, we must consider:

> (1) the prejudice or surprise in fact of the party against
> whom the excluded evidence would have been admitted;
> (2) the ability of that party to cure the prejudice; (3) the
> extent to which allowing the evidence would disrupt the
> orderly and efficient trial of the case or other cases in
> the court; and (4) bad faith or willfulness in failing to
> comply with a court order or discovery obligation.

*Solotar v. Northland Hearing Ctrs., Inc.*, Civil Action No. 17-1919, 2017 WL 6520538, at *3 (E.D. Pa. Dec. 20, 2017) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)); *see also Tolerico v. Home Depot*, 205 F.R.D. 169, 175–78 (M.D. Pa. 2002) (noting that trial courts throughout the Third Circuit apply the *Pennypack* factors when considering whether to exclude evidence as a

sanction under Rule 37(c)(1)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Pennypack*, 559 F.2d at 905.

In their sur-reply, which was filed without leave of Court, the Pagers argue that their late disclosure of these materials is both substantially justified and harmless. Their representations on this point, however, are extremely vague, referencing documents that were not previously in their possession, and thus needed to be "recreated and obtained from other parties." The sur-reply does not explain why this was not, or could not be, accomplished prior to the close of discovery. The sur-reply also notes that the plaintiffs had previously disclosed during discovery that their damages approached $100,000 but they did not have all documentation in their possession, and that it might take some time to obtain or recreate supporting documentation. In subsequent correspondence, William Pager has noted that other aspects of the discovery process were permitted to continue long past the formal discovery deadline in this case, and he has requested that the plaintiffs be granted leave by the Court to supplement discovery on the issue of

damages.

We find the plaintiffs' arguments that their late disclosure of this information was substantially justified to be wholly unpersuasive. But the disclosure of this additional information on damages does not come on the eve of trial. Indeed, there is no trial date yet scheduled in this case. Meanwhile, Fannie Mae has articulated no actual prejudice that it will suffer as a result of the late disclosure of this information. Under the circumstances, we find the plaintiffs' late disclosure of the proffered evidence was harmless, particularly because any unarticulated prejudice may be readily remedied by reopening discovery for a brief period to permit the plaintiffs to *fully and finally* supplement their disclosures and discovery responses with respect to the issue of damages, and to permit the defendants, if they wish, to reopen the depositions of William and Jenna Pager for the limited purpose of examining them on the issue of damages. *See CCR/AG Showcase Phase I Owner, L.L.C. v. United Artists Theatre Circuit, Inc.*, No. 2:08-cv-00984-RCJ-GWF, 2010 WL 1947016, at *8 (D. Nev. May 13, 2010) (noting that courts are more likely to exclude damages evidence when it is first disclosed shortly before trial and substantially after discovery has been closed, but that courts have

declined to impose the exclusion sanction where there was sufficient time to complete necessary additional discovery before trial).

Moreover, we find that there is a genuine dispute of material fact with respect to the total amount of damages suffered by the plaintiffs, making summary judgment on this point inappropriate.

Accordingly, we will deny Fannie Mae's request that additional, late-disclosed evidence of damages be struck, and we will deny summary judgment in favor of Fannie Mae on these grounds.

### E. The Plaintiffs' Motions for Summary Judgment

The plaintiffs have likewise moved for summary judgment against Met-Ed, FirstEnergy, and Fannie Mae.

Based on the foregoing discussion, but viewing the record in the light most favorable to Met-Ed, FirstEnergy, and Fannie Mae, the non-moving parties, we find that there are genuine disputes of material fact with respect to whether these defendants breached their respective duties of care, as well as whether and to what extent their conduct proximately caused the property damage suffered by the plaintiffs.

Accordingly, we will deny the plaintiffs' motions for summary judgment against Met-Ed, FirstEnergy, and Fannie Mae.

## IV.  CONCLUSION

For the foregoing reasons, Allstate's motion for summary judgment (Doc. 78) will be granted, and all other motions for summary judgment (Doc. 79; Doc. 82; Doc. 140; Doc. 142; Doc. 145) will be denied. Discovery will be reopened for a period of ninety days for the limited purpose of supplementing the plaintiffs' disclosures and discovery responses on the issue of damages (to be completed within thirty days) and reopening the depositions of William and Jenna Pager (to be completed within ninety days). The Clerk will be directed to set this case down for trial on all remaining counts of the complaint.

An appropriate order follows.

Dated: September 27, 2019          ***s/Joseph F. Saporito, Jr.***
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge